My name is Katherine Short. I represent plaintiff and appellant Pro-Life Mississippi and the individual plaintiffs. And one of those plaintiffs is here this afternoon, Mr. Zastrow. It is safe to say that two years ago my clients did not foresee that they would be here today. The problems they were having with the Jackson police seemed to be something that could be worked out if they could just find the right person to talk to. There didn't seem to be any reason, as the saying goes, to make a federal case out of it. But try as they might, they could not time and again throughout 2011, 12, 13, 14, up to the present. What were you trying to work out? In other words, how would you define the problem between you and the police that you were trying to work out? Work out the fact that the police continue to arrest and threaten to arrest my clients for resting a sign on the sidewalk, resting their protest sign on the sidewalk. Now when you say resting it on the sidewalk, was it resting it against a bank of grass there? Was it resting flat on the sidewalk? No, Your Honor. The difference was simply between holding it suspended in the air versus holding it resting on the ground. How big a sign? The signs ranged in size. Probably the largest was about close to six feet tall by about three feet wide, ranging to smaller signs that were maybe three or four feet tall and a couple of feet wide. So you were holding big signs. You had one person at one end, one at the other, or just one person holding the sign? One person holding the sign. One person holding the sign on the sidewalk? Correct. On one side of the sidewalk, and you can contend that it was not blocking walking traffic at all? I'm sorry, I didn't catch your first question. It was not blocking walking traffic? Correct. All right. Now what I was interested in is you said we hoped we would work it out with the police. So what was the point of negotiation with the police in which it failed and your hope became dashed? Our hopes were dashed in July of 2014 after numerous attempts to, when the city had been promising discussions, we had actually sent a draft complaint to them in hopes that this would spur them to get serious about discussing, and finally a new rash of... What were you discussing? I mean, each side was given something. We had hoped that we were going to be able to work it out, work out a compromise. Where did the compromise fail? Well, I'm sorry, I would say when I say work things out, I was not suggesting that we were planning to give up something. So you're saying that you had two brick walls, the police on one hand, you on the other, neither giving in on any point. So you never had hopes that were dashed. Nobody ever conceded a single part of the dispute between the two of you. Your Honor, I would characterize it as the city had suggested that yes, we'll talk about this, yes, we'll talk about this. We could not even bring them to talk about it. About why did the police continue to arrest people who were not blocking the sidewalk based on a policy that said simply that resting your sign on the sidewalk was per se an obstruction. So there was never any hope for negotiations as far as you're concerned? We did, Your Honor. We did hope that by, again, by talking to the right person, going up high enough, that we would reach somebody who would say, yeah, that's not right. I will speak to the police. Where did the police want you to rest the signs? What was what was their position? You said it sounds like you're saying we wanted to rest our signs on the sidewalk, and we don't consider that obstructing a sidewalk. And what was the police saying? We'll rest them on the bank, arrest them in this area over here that's set aside, or you can't rest them at all anywhere? Don't let them touch the ground. It was a totally irrational policy. It was don't let them touch the ground. You cannot, you must suspend them in the air. You can actually rest them on your shoes, but you can't let them touch the ground. It was an, it's an irrational policy, but it's one that the city sticks to in this appeal. Let me ask you, I was a little confused. I read the parts of the complaint, I read your briefs, I found a series of events that seem sort of disconnected and, you know, span that period of time, but it's not every day, and that the threats were made by the police, and then, you know, once every other month or so, they might arrest somebody, they might even bring charges, and they drop the charges. Not a single person has been penalized for this activity, have they? No, because the charges are dismissed. They may be arrested, cited, have to show up at acknowledge, Your Honor, that establishing an unconstitutional policy by an accumulation of individual incidents is ordinarily a fool's errand. However, in this case, in addition to the record, we have the city's own representations, particularly in this court, in their briefs, where they state, for instance, at page 42 of their brief, a large six-foot-tall sign resting on the sidewalk is an obstruction, no matter what the contents. They have created a per se rule. If your sign rests on the sidewalk... Did they ever explain why the toes, why resting it on your toes made it constitutional? No. Your Honor, it's a totally irrational policy, and they stick to it, and I would look forward to an explanation from that as well, and in fact, that's why we had to get to this court, to get them to actually come out and admit that they had this policy. So it wasn't just leaving a sign on the sidewalk. When reading it, I really had a problem in what was suggested as what constituted resting a sign, and you're saying contact with the ground constituted resting a sign. Correct, and then the ironic thing is that in their briefs, we also see an example of the same problem that my clients have been having out on the sidewalk with the constantly shifting applications of the law. On page 45, they said they are not allowed to carry six-feet-tall signs on a public sidewalk. Now, not allowed to carry signs, and where did that come from? We've never heard that before. Unfortunately, no officer on the beat has heard that, but this is... Well, it can't be much of a policy if you never heard about it and the officers hadn't heard about it. Correct, but the city is now saying it's of a piece with the confusion created by the idea that you can have per se obstructions. This conduct is an obstruction, no matter what the other circumstances, no matter if there's pedestrian... Well, it seems to me if you're walking with a six-foot, the sign is six feet wide... No, tall. Three feet wide, two, three feet wide. Six feet tall. Six feet tall. Yeah. Six feet tall. Your pole is six feet tall. No, the sign. The sign is six feet tall. Does it have a pole attached to it, or they hold... They just hold it. Like a Joe's type thing? They just hold them. Okay. A pole would be ungainly, and I mean, they say in their briefs, they talk about the officers very reasonably asking people to move off the sidewalk and put down their signs, when in fact, what is you must get up on the sidewalk and hold up your signs. Well, let me step back a minute, because the trial court indicated confusion about exactly what your theory is. Is it your theory that the Mississippi statute is being unconstitutionally applied? Is it your theory that the statute is unconstitutional, or is it your theory that there is some policy apart from the statute that is being selectively applied to your clients? The latter, Your Honor. I don't think that this policy is applied to any other picketers, and in fact, the city said on page 36 and 37 of its brief that probable cause always exists for the officers to arrest these plaintiffs for obstruction because of their, quote, known tactic of sitting in lawn chairs, and that was striking and holding signs, and this was a striking admission, because if you look at that part of their brief, they say Officer James had probable cause to arrest two of the plaintiffs on Fondren Place on a certain day because Officer McGowan recalls a woman on crutches on State Street on a different day, on a specified day, who he says was hindered. So now there is just this blanket probable cause to arrest these plaintiffs for obstruction. I've seen the record has pictures in it of these signs and what the police say is illegal, and the basis that they say that it's illegal. I mean, if you've got a three-foot sign on a five-foot sidewalk that's five feet wide, I mean, and you can see how that might be, would interfere with walking traffic. Well, it could be, but it doesn't have to be, and I think that's the point. To come up, if the city wanted to pass a law, attempt to pass a law that said no one may hold a sign wider than three feet on a sidewalk narrower than five feet, for example, they could, it would be a content-neutral law, and they could argue that it's narrowly tailored, and we could have a discussion about that, but there is no such law, and the problem is the officers are simply enforcing a policy so that you will see someone's holding a sign, and it's parallel to the sidewalk. They're not taking it more than one or two feet, not taking it more than their own body's take up on the sidewalk, and yet the police call that an obstruction, and again, because of this rule that they have created that just deems certain things to be obstructions. So they don't require you to continue to walk or anything like that? They don't require you to continue to walk with your signs in terms of like a picket sign? Not routinely. There have been some more, an occasional move along here, please, sort of. Well, I don't know, because you can't just bar people that want to get into the clinic. There is absolutely, I want to make that very clear. There is no allegation that my clients have ever obstructed anybody's access to the clinic. That is simply not part of this case. What we are talking about is a sidewalk that is rarely used by pedestrians. If you look at either plaintiff's or defendant's exhibits that show the video of, there's State Street and there's Fonder Place, and Fonder Place is usually the one that we're talking about. It's a sidewalk to nowhere. It begins at one end on landscaping, ends at the other end in some dirt and debris. It's an anomaly. How long and how wide is this sidewalk? You said it's five feet wide? I believe it's five and a half feet. I'll have to check the each side, or is it just kind of out in the middle of nowhere? It ends in some landscaping about, I think, about 10 or 15 feet from State Street, and it goes along the side, and then it ends at the clinic's driveway on the other end, and then beyond that is debris. Again, pedestrians walk up and down. There is no other sidewalk on Fonder Place. When you say pedestrians walking up and down, you're saying that there's an unconstitutional policy of the City of Jackson to have this signs up rule. Is that it? I mean, because there were also lawn chairs, and there was also allegations about a ladder. Correct. And, well, again, it was the signs up is one policy, and the other one is what we referred to as the deemed obstruction policy, that anything on the sidewalk other than one zone two feet counts as an obstruction, and this could be a lawn chair or a ladder, and again, if the City wants to pass a law. But again, I mean, two things. Number one, who is the policymaker? I mean, how do you get this into the pattern and policy type cases? That's where the city's own admissions come in, Your Honor. I think that's where you see in the city's own... Which we don't see until the brief, because they were not making those admissions, or at least the trial court didn't find there were such admissions. Correct. That's right, and that's why this process is so valuable, and I think it's important because it is sometimes very hard to pin down a policy. Again, what kind of injunction would you seek? Very simple, Your Honor. We're not looking for a get out of jail free card or anything like that. We simply ask that the state and local obstruction statutes be enforced only when there's an identifiable person or vehicle who has been or is threatened to be unreasonably hindered. That's all. So you're saying obstruction means... Do you have any state... Is that in... I mean, state law could provide that there would be an obstruction even if nobody was walking by, because somebody might walk by. I agree, Your Honor, but what we have here is a history with the city of enforcing these policies only against the plaintiffs, and this is the second go-around for the plaintiffs in terms of having to deal with the police in, you might say, over-enforcing laws before it was assigned ordinance, disturbing the peace ordinance, now it's talking about the obstruction ordinance. You're talking about selective enforcement of a legal policy? Yes, it is enforced against these plaintiffs. That's an as-applied challenge, isn't it? Yes. I mean, it's a constant... The obstruction statute has got to be clearly constitutional. Correct. All right, but you just... I asked you before if it was an as-applied challenge, and you said no, so maybe I posed my question wrong, but... I think you gave me three choices, and I wanted choice number three. Yeah, what is choice... Well, tell me again, because now you're saying it is unconstitutional as-applied. You asked if there was saying the state statute was facially invalid, invalid as whether there was an unconstitutional policy. And I probably didn't... It said unconst... Yeah, and I said, right, selective prosecution, which is not well put, I'm afraid. Yeah, so... Or a municipal policy, an unconstitutional municipal policy. That is what I'm saying, yes, Your Honor, and that's... And this policy doesn't consist of arresting people and fining people. It just In other words, when you talk about there being times when nothing seems to happen, it's because there are... After several years of being... People being brought into court and charges dismissed or filed... I think what your brief said was 133 something or others. It had the number 133, the times that the police had been called, maybe. I believe... Oh, that was like calls out to the clinic. Yes, I'm sorry. Those were... Those were... Calls out to the clinic. Yeah. But that... And then there's also a classification, I guess, of threats. And how many threats to your plaintiff people, and how many not threats, but actual arrests during this period of time? Most of the arrests are enumerated in the complaint to the papers, except for those which we deliberately did not plead because they are still pending in court. About 12 over the course of four years. And then, I mean, threats, it would be very difficult to enumerate them, Your Honor, because... But did you give... In terms of pattern, and that it's something that's ongoing and existing, as opposed to not a policy, but just a singular event, or... What would you tell the judge, or... It is something that has happened with such frequency. My clients have been trained to hold up their signs. And I'll be real brief, if you can answer it real brief. There is something about dissimilar treatment with respect to merchants who can put signs out in front of the stores. Now, this little sidewalk that you expressed and described to us doesn't sound like there's other merchants that along this sidewalk, right? So are you talking like in a different part of town, a different sidewalk, where merchants can have their signs, or put things out on the sidewalk? There is a main street, Your Honor, State Street. And the clinic is on one side, on a corner of that. And then the merchants, and restaurants, and chairs, and tables, and other things are on, and mannequins are on the other side of State Street. Then on the clinic side, it's on the corner with Fondra in place, where the entrance to it is. And that is the street without the sidewalk. And that is the layout. Thank you. Okay. We've saved some time for a bottomless hole. Ms. Barker, we'll hear from you. Good afternoon, Your Honors. My name is Claire Barker, and I represent the City of Jackson. Your Honors, the district court was correct in denying injunctive relief for the plaintiffs for three reasons. First of all, there is no signs-up policy. What we're talking about here is JPD enforcing Mississippi's obstruction statute. Even if the court accepted plaintiff's assertion that there is a signs-up policy, there has been no showing of a policymaker who adopted the policy or knew about it. And that's been promulgated throughout the challenge. And the district court was correct in finding that the plaintiffs failed to demonstrate that someone espousing a different viewpoint was treated more favorably from them. Finally, Your Honors, this obstruction statute and the way that it's been applied, it is narrowly tailored to the City's interests, which is traffic and pedestrian safety. And also, it allows ample alternative forms of communication. First of all, the signs-up policy. There is no such policy of the police department saying, you have to arrest us on your toes, or you're going to be arrested. I agree. That sounds ridiculous. That is not the case. Is there evidence of that? No, Your Honor. There's no evidence in the record that that ever occurred? Actually, the plaintiffs asked Commander McGowan, in the record, I believe it's page 942 in the record, is there a signs-up policy? And he said, no, there is no such policy. What this is, is a violation of the obstruction statute. Now, the obstruction statute is important. Yes, Your Honor? Go ahead. Okay. The obstruction statute is important. What I'm trying to get at is, what kind of evidence did the plaintiffs produce that showed that there was a signs-up policy and that the police had told them on more than one occasion that if they put it on their toes, it would meet the standard they were demanding. If they put it on the ground, it failed the standard they were demanding. Was there evidence of that? Some of the plaintiffs did testify to that. As far as putting it on the toes, that was something that the plaintiffs were familiar with. That was never something told by a police officer. There's no evidence of that. Well, I mean, they can, yes, but that's called a credibility call. If the officer says, I didn't tell them that, and the plaintiff says, yes, you did, and she quotes from your brief, which says, a large A-frame ladder or a large six-foot tall sign resting on a sidewalk is an obstruction no matter what the content. Now, is that some kind of, is that what you put in your brief? Is that a policy? Is that what you're asking? Well, you're stating that a large six-foot tall sign resting on a sidewalk is an obstruction no matter what. That was testimony from Commander McGowan. There's no record cite here. Okay, so Commander McGowan's position is that a large six-foot tall sign resting on a sidewalk is a per se obstruction. I don't believe that he said a per se obstruction. What he said is, given this. No matter what its content. That was strictly argument from the city in that case. That is not evidence that's in the record, and that is not, that was not presented at the trial court. It's in your brief. It is in my brief, Your Honor, and as far as the evidence produced at the five days of laborious testimony in this matter, the trial, I mean the district judge was in the position to weave through all of the testimony and to determine the truth and the veracity of the witnesses compared to the truth and the veracity of the officers, and what he found was that the officers, quite frankly, they handled the pro-life protesters with kid gloves in this case. Now you're going to tell us what the district judge found, and I was really interested, and then all of a sudden you give me your personal opinion of frankly of some other stuff. Can you stay on one sidewalk for a little while? Okay. In this case, what the district judge found is that in the cases where there are citations issued whenever a protester has a large six-foot sign that's three and a half feet, that is an obstruction. Now, the Fondren area, where this clinic is, is very unique, and I know that Judge Jolly may be familiar with it in Jackson. It is considered as an entertainment district. It is one of the most heavily populated or pedestrian-friendly areas that has a lot of traffic and a lot of pedestrian walking. It's a mixed-use district. There are boutiques. There are restaurants, and . . . A-frame signs out on the sidewalk saying special for hamburgers today, right? There are, Your Honor. Why aren't those obstructions? Those are not obstructions because the A-frame sandwich signs are specifically allowed by city ordinance. There's an ordinance pertaining to them stating how large that they can be, and they haven't been obstructions in this case, and in fact, the only . . . What did the district judge find? Can we get back to what the district judge found? Can you just stay on that track just for a little while? Okay. Well, the district judge did find that the plaintiffs failed to make a showing that there is a policymaker in this case that accepted this policy. The plaintiffs tried to go the ratification route as far as they said they sent letters to the city attorney's office, and we acknowledged them. However, that argument has been foreclosed upon by this court in Worldwide Preachers v. Columbia. Secondly . . . Did he find that they arrested people for arresting their signs? I guess there was contest that the police said, we don't arrest people if it just happens to touch the ground, and they said, yes, this is going on. Did he make any credibility determinations with respect to any of those? Well, not specifically. There was credibility determination as far as a specific plaintiff in this case found that he . . . Burkeen. Burkeen. Yes, Your Honor. And what's important here is that the statute says willfully obstructing the sidewalk. The plaintiffs are given multiple, multiple warnings to move your sign, to move the large six-foot-tall A-frame ladder, and also to move the chair that you're sitting in on the sidewalk, and they say no. What did the district court find with respect to whether there was a signage policy? Well, the district court found that there was not enough evidence produced to demonstrate a policy, a widespread policy throughout the city of Jackson that we are applying this ordinance in a discriminatory manner, and the district . . . So, I ask you, though, what did he say about a signage policy? What did he . . . Did he make any finding with respect to whether there was a signing policy . . . I mean, a signage custom as applied to this particular group of people? No, Your Honor. Not as far as a signage custom. What did he find? What he found was he relied on U.S. Supreme Court's case . . . What did he find? Oh, I'm sorry. He found that the protesters were not treated differently than other people espousing a different point of view, and in this case, there was ample testimony . . . And what did he mean by that? A different point of view in terms of right to life or . . . Yes, Your Honor. I was about to tell you that. In this case, the plaintiffs had the perfect opportunity to demonstrate that. In this case, pro-choice and pro-life protesters . . . Okay, so that's . . . Demonstrate side by side. So, what you're . . . Okay, so what you're saying is that he treated anybody at the abortion clinic equally in terms of what kind of demonstrations they could make, and that's quite apart from the fact that in other parts of the Fondren area and with respect to other subject matter, they treated them differently. So, you're saying that there was equal treatment with respect to people that were involved in the abortion question . . . Correct. But that the abortion question was treated differently from all other subject matter in the area. That's what you said. I don't believe that there was testimony as to all other subject matter . . . Well, you've said that. I mean, as I understand, you've said they allow signage, any kind of thing in other parts of Fondren, and your argument is that they treated them equally and there was no discrimination among subject matter because he treated pro-abortion the same as anti-abortion. So, I don't know whether that gets you or not. I don't know whether you have to . . . If they're all arrested equally, but they shouldn't be arrested, that's still wrong, isn't it? They're not covered because they treat . . . And in this case, Your Honor, in this case, there . . . I believe maybe one or two people have actually been arrested. In this case, they were issued field citations and allowed . . . What you're saying is . . . What you're effectively saying is that if the matter is political, we're going to apply one. If it's commercial, we're going to apply another. That's what you've essentially said. Well, in the signs of the sandwich . . . in the cases of the sandwich board and other art, that is . . . well, the sandwich board would be commercial speech, and that's regulated by another ordinance for the city. But in this case, there just simply has not been showing that the ordinance, Mississippi's obstruction statute, I'm sorry, has been applied differently to the plaintiffs, none whatsoever. Well, it has been applied differently to them. But see, whether it's applied differently really isn't the test because the point to me is whether it should be applied to people exercising legitimate First Amendment activities. But before you get to that question of discrimination, I think what the judge said here is he talks about in order for you to establish a custom or practice, you must have a persistent widespread practice. That's at page five of the transcript. In other words, you must identify the policy practice custom. You must connect the policy to the city and show that the injury occurred because of the execution of the policy. I'm not sure if we've met the threshold on any of those things at this point.  So that . . . I mean, he doesn't really find that there's not a policy. He just doesn't find enough evidence of one for a temporary injunction. Exactly. And that's the standard here is whether or not there's a likelihood of success as to the merits of their case. And the court found that there simply was not enough evidence to issue injunctive relief in this matter. Further, there has been no testimony or evidence brought forth by the plaintiff that this signs-up policy is throughout the city of Jackson Police Department. Like I said, there was no policymaker whatsoever identified. In fact, Chief Vance, who is the current police chief, was called at the hearing of this matter, and the plaintiffs failed to ask him anything about a signs-up policy. The only thing that they questioned him about was whether or not there was training in this case. And also, Your Honor . . . In this case, maybe we can properly fit in a 1983 case of the police suppressing their First Amendment rights. I mean, instead of violation of city policies and that sort of thing, because, I mean, you have . . . there is . . . as I understand, what the record shows is that you have one policy that applies to this abortion clinic, and it is applied equally with respect to anybody that wants to exercise their First Amendment rights there. But then, with respect to the rest of the city, you have a completely different policy on every other matter except this abortion clinic. And they're claiming that they come in and harass them for exercising their First Amendment rights, and it's a 1983 action and not a . . . this action they're trying to bring against the city, or is this . . . this is a 1983 action, but it's . . . it's really discombobulated. I don't know what is going on here. I would agree with you. I agree with you, Your Honor. Well, and it's the plaintiff's fault to a large extent. And quite frankly, Your Honor, the city has attempted to be in a position to weave through all the allegations in this case as far as the different policies that are alleged. This is the first time that I've heard about a harassment policy from the city . . . from the city of Jackson. Well, that's what they're essentially saying. I mean, it's . . . And they are saying that, but that was not even questioned in the five-day hearing on this matter. But that has not been . . . that has not been alleged as a constitutional violation of harassment for exercising First Amendment rights? I'm not sure if that was alleged in the complaint, but what I do know is that that was not questioned That was not tried. That was not tried. Well, nonsense. I mean, harassment is the . . . the acts that they say consisted of these officers walking by and yelling at them, move off that sidewalk, move that sign, get that sign on your feet, repeatedly, rudely. And that's what they're saying. Now, whether it's enough, I don't know. But that's . . . if that's not harassment, I don't know what is. Well, Your Honor, and the way that the plaintiffs have couched this, it does sound like harassment in their briefs. It does. It sounds like it's some sort of torture method where, oh, if you have your sign up two inches off the ground, it's fine. But, you know, hold it up as far . . . as long as you want. It sounds ridiculous. I agree. And that's . . . What seems to me this case is about, you know, why are you getting all wrapped around the axel? And I don't . . . and I'm just . . . this is kind of shooting from the hip, but . . . because the only way I can understand this case is that you have a 1983 action for violating First Amendment rights by . . . it's harassing conduct on the part of individual officers. And you're trying to make the city liable for that conduct under Monell by establishing a policy, which you haven't been able to do, which the plaintiffs have not been able to do. Exactly. But they've got . . . they've got . . . they've stated a plausible claim against the individual police officers. And as far as the individual police officers . . . But not for a public policy or not for . . . What? Not because of municipal liability or . . . That's right. But . . . but because of a separate statute that's not involved in this case. No, it's not a separate statute. It's the Constitution. A 1983 claim. Well, a 1983 claim based upon the First Amendment of the Constitution. Right, right. And as far as the individual officers' liability goes, I believe that the plaintiffs tried to hold Commander McGowan liable. And in this case, there is nothing in the record that demonstrates that any of the officers acted objectively unreasonable here. What the officers have testified to is that they asked them multiple times to move their chairs on the sidewalk, their ladders, and also the large signs. And that they refused to. They flat out refused to. And there is testimony stating that once they are given a field citation, they are allowed to continue to protest and to share their point of views. The plaintiffs are sidewalk counselors. There is nothing in the record that demonstrates that simply asking them to move a large, six-feet-tall sign prohibits them from speaking to the women. Yeah, but you're making credibility findings just as you stand up there. The police said they were acting reasonably. They say they weren't acting reasonably. You say, well, the record shows that they were acting reasonably. Well, they said the record shows they weren't acting reasonably. But the judge made the fact finding that there hasn't been enough to establish. All he has to do is determine whether there's a probability of success, right? You're not. Right. That's right. This is for an injunction. Exactly, Your Honor. And the district judge, you know, sat as a fact finder and assessed the truth and the veracity of the witnesses. And he simply found that there was not enough testimony. But this is not a 1983 case. I mean, since nobody's asking for damages, all they want is injunctive relief. At this point, they want injunctive relief. And that's, I mean, there's no predecessor, 1983 claim for violating First Amendment rights that preceded this. Is there another part of the lawsuit that's not here? No, Your Honor, this is it. They sought a TRO and a temporary injunction, right? Yes. To prevent this kind of action from occurring. Yes. Okay. Yes. And there's also, there's somewhere down there, there's some damage. Well, no, they just weren't, damage claims were not the proper subject of an injunction hearing. Correct. Correct. Eventually, this would get to a juncture where damages would have to be assessed. Did the claim, well, only if they plead it in the complaint. They did plead it in the complaint. They want damages. Against the officers. Against the officers. But not against the city. And they want an injunction against the city. What is this? I mean, what is this? They could get all of that. You know, we're trying to enjoin, enjoin the police officers. We don't have to worry about that because the only thing we have. I have to understand the case. Well, if this were a case for school desegregation, there wouldn't be any question that they could get an injunction and then they could get damages. And if there was a pattern. And quite frankly, Judge Dolley, I've asked the same thing. What exactly do they want? Whenever they, the plaintiff's letters over, you know, as your Honor noted, they weren't budging on anything. They basically want to have large signs on the sidewalk. But they, but the, if the evidence, I mean, I'm not saying the judge is clearly erroneous because I haven't read the record, but the fact is there may be a legitimate dispute as to how you interpret that language of the statute about what, what obstruction is if, as they say, not a single person has been prevented from walking down the sidewalk. And that is not in the record. Well, in the record, Karen Gilder, Karen Gilder, who is, was on crutches. She has a. Okay. Okay. She has a business there. And she has been prevented from walking on the sidewalk. The plaintiffs are not exactly correct in saying that this is a rural, not a rural area, but an area that has not traveled. State Street is one of the major arteries within the city of Jackson. Where they have these large signs on the sidewalk is on State Street. As Judge Dolley knows, the, there is no stop sign there. There is no stoplight there. The only thing separating the sidewalk from the street is about three inches of curb. Now, if any pedestrian decides has to travel around there, there is a very, very real risk that either the pedestrian or someone having the sign has to go out into traffic. And that is a, that is a major traffic safety. And that Commander McGowan testified that that is the only reason that they are called out there is to monitor the safety of the pedestrians on the sidewalk and also to make sure that these large signs do not interfere with traffic. I see my time is up. I'm not sure if the judges have any more questions. Okay. Thank you, Ms. Barker. Thank you so much. Thank you, ma'am. Ms. Short, you have some time for a vote. Tell us what this case is about procedurally. One, two, three, four. I do not, the complaint alleged several causes of action, and I am almost positive we had 42 U.S.C. 1983 under the first, fourth, and due process clauses. I know about what, but what are the claims under those statutes? The claims are that the officers can have a, were arresting people when there was not probable cause to do that, and thereby violating their First Amendment rights because of the nature of the arrest in terms of their— Did you see damages? Yes. Monetary damages against the police officers? Yes. All right, and then, so once you filed your complaint, then you go into the court and ask for a temporary injunction, or I guess maybe a complaint, ask for a permanent injunction against the conduct of the police, correct? Yes, that was a preliminary injunction hearing we held. And then you had a preliminary injunction hearing, and all the other aspects of the complaint and all the other claims you're making and the relief you're seeking are embedded somewhere in the complaint that has never been addressed by the district court or anybody else to this point. That's correct. So the only thing for us is whether you have made out a case for a temporary injunction. Correct. And that's the only thing you're appealing is the denial of the temporary injunction? Correct. Okay, then that makes it pretty easy. Because I wanted to read one other, on the question of whether— I don't think you've made a case on that. I'm sorry? You haven't made a case on your injunction for relief, it seems to me. Well, I wanted to read one other statement from the city's brief, especially with regard to whether the city or the individual officers are responsible— Because you're suing the individual officers. You're not seeking, you're not trying to enjoin each one of them. Yes, they are. Yeah, you're seeking to enjoin them individually. And the city.  You introduced evidence against them that they have been out there. Yes. And have impaired your ability to exercise your First Amendment rights? I believe so. Your Honor, we named many officers, several officers in the complaint. And then at the preliminary injunction hearing, there may not have been a one-for-one correspondence in terms of the evidence that was produced at that hearing.  So what you've got to show to get the injunction, though, is a likelihood of success on the merits. And I don't—I mean, have you produced enough evidence to show that you're likely to be successful on the merits? I believe so, Your Honor. Against each of these individual officers? Not only did we show in our brief, we laid out the evidence in the brief that was largely undisputed about arrest, arrest, arrest, arrest. There was no obstruction. There was no obstruction. There was no obstruction. That—I mean, they point to one incident that happened at some other time where, ironically, no one was arrested. Did you have any evidence at all that one person was arrested because they rested the sign on their foot? No, you don't get arrested. All right. And it is counsel, correct? I don't know if the judge made the findings, but counsel says that the evidence showed, whether you agree with it or not, whether you think it's right or not. I'm not taking a position because I don't know. I'm not the fact finder on that. But that no one was, in fact, cited, much less arrested, until after they had—there was warnings. In other words, if your position is there's no one that said they got arrested for putting a sign on my foot, and if, in fact, there was evidence that they were warned repeatedly, is that your position is that even if you're warned repeatedly that you continue to have a right to lay your sign on the sidewalk and leave it there, even if the police are telling you, don't leave it on that five-foot sidewalk, you're just—you can just leave it there? No, I'm not sure what you mean by leave it. We're talking about people holding signs— That's right. So I'm saying—okay, you're saying no one was arrested for putting it on their foot, right? Right, because that's— So what you got— On the ground. On the ground. And there's nothing to show that you're not saying that they put it on the ground and they got arrested for it. Yeah, I mean, you mean holding—having a sign resting on the ground? Yes, they have been arrested for that. Yeah, but you forgot, I think it's like 12 arrests total that you referred to. Okay. Yes, Your Honor. And I'm saying there's a pattern of arrests— Yeah, but 12 arrests in four years. And you're picketing at least two days a week. But, Your Honor, in addition, multiple threats and the fact that— I understand that. And they don't have to be—they shouldn't have to be— Let me ask you a question. In my short experience about labor law picketing, it seems to me that the way a company would make its case, that is to say the plaintiff, that the picketing had gone too far would be to videotape the actions that were occurring during the picketing. And were there any kinds of, you know, recordations of these events so that we could—so that the court could have seen police officers berating these people and threatening them? Or was it just their word, the plaintiff's word, against the officer's word? There is—there are video and photographs in the record. And there are video of, for instance, on State Street of a particular—couldn't be clearer sort of incident where Mr. McKean was arrested for blocking the sidewalk. And you can see exactly what happens, how it happened right there with Mr.—Commander McCallum walking by him on the sidewalk. And in every case, though, where there was an arrest, there was either a field release and or the charges were dropped? No. That's why, again, some of the plaintiffs—some people who have been arrested are not before this court. But I would like to point out one other statement in the city's brief where it says, on page 17, plaintiffs now argue that Commander McGowan is individually liable for creating a signs-up policy whereby the plaintiffs cannot rest large six-feet-tall, three-and-a-half-feet-wide signs on the sidewalk. This is not a policy created by Commander McGowan. Rather, this is an enforcement of the state of Mississippi's obstruction statute. Again, we see here this is the city's policy. And the city is admitting that resting a sign, resting a large sign on the sidewalk, they consider that to be per se violation of the obstruction statute. And that is not what the obstruction statute says, is not what it means, and it would be a violation of my client's First Amendment rights to enforce it that way. Thank you. Thank you. That completes the arguments we have on the oral argument calendar for today. So this panel will stand in recess until tomorrow afternoon at 1 p.m. Thank you.